IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No. 1:15cv1231 |
| v. ) | |
| ) | Hon. Paul L. Maloney |
| CMS Energy Corporation, et al. ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

## DECLARATION OF RICHARD D. HACKLEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, RICHARD D. HACKLEY, pursuant to 28 U.S.C. § 1746, and based on my personal knowledge, declare and state the following:

1. I, RICHARD D. HACKLEY, am employed by the United States Environmental Protection Agency ("EPA") Region 5 office in Chicago, Illinois as a Supervisory Accountant in the Comptroller's Branch of the Resource Management Division, Program Accounting and Analysis Section. As part of my duties as a Supervisory Accountant, I am responsible for the compilation of costs incurred by EPA in connection with site cleanups and enforcement actions under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended. As a supervisor, I also oversee all work performed by other EPA employees in Region 5's Comptroller's Branch of the Resource Management Division, Program Accounting and Analysis Section. In my position with EPA, I have been directly involved in the process of documenting the response costs incurred by EPA at sites in Region 5, which covers Minnesota, Wisconsin, Illinois, Indiana, Michigan, and Ohio.

1

2.      My duties include, but are not limited to, reviewing financial documentation that supports costs incurred by EPA, other federal agencies with whom EPA has entered into agreements, and EPA's contractors pursuant to CERCLA to determine whether those costs are adequately documented, and excluding costs that are not supported by the available documentation.  My duties also include performing the final quality assurance review of cost documentation packages and preparation of reports which state the costs incurred by EPA, other federal agencies conducting response activities on behalf of EPA, and EPA's contractors at CERCLA sites.

3.      I have 35 years of professional accounting experience, and have held professional positions with EPA Region 5 and provided income tax preparation services for two years prior to being employed by EPA.

4.      I received a Bachelor of Business Administration, Accounting and Finance, from the University of Michigan-Flint.  I have also received supplemental education and training in the financial policies and procedures of the Superfund program.

5.      I have been employed by EPA Region 5 since 1984.

6.      As part of my responsibilities as Supervisory Accountant, I have personally overseen the preparation of the cost documents for site response activities undertaken in response to the release and threatened release of hazardous substances from facilities at and near the Little Traverse Bay CKD Release Site in Resort Township, Emmet County, Michigan (the "Site").  I have personal knowledge of all procedures followed by EPA employees in compiling and reviewing cost documents, such as employee timesheets, contractor invoices, and travel vouchers, for the Site.

7. EPA maintains cost and collection information for the Site in an internal database called the Superfund Cost Recovery and Imaging Online System ("SCORPIOS'), which can be used to generate standardized Site-specific reports and information compilations.

As response costs are incurred, EPA employees use the assigned site/spill identification number ("SSID") to charge the costs to a site. SSID B5AM is the identification number assigned to the Site. The response costs charged to B5AM are for response activities incurred in connection with the Site which also include oversight for work completed under the Administrative Order on Consent. EPA's Contractors, other federal agencies such as Department of Interior and Agency for Toxic Substances and Disease Registry (ATSDR), and State and Tribal organizations also provided response support activities. The Department of Justice provided enforcement work associated with the Site. The costs charged to SSID B5AM are charged as Site-wide costs and are not associated with separate operable units designated for specific work activities or particular areas of the Site.

8. Using SCORPIOS, EPA prepared itemized cost summary ("ICS") reports for the Site including one for costs incurred through fiscal year (FY) 2015 and, later, another for costs incurred through FY 2016. Attached to this declaration as Exhibit 1 is a true and correct copy of the FY 2016 ICS which was prepared on or about July 11, 2017. The attached ICS reflects the total EPA costs incurred in connection with the Site through September 30, 2016, which were billed to the B5AM SSID. EPA has incurred costs associated with the Site subsequent to September 30, 2016, and will continue to accrue such costs as response work continues at the Site. The ICS includes a tabular breakdown of the various costs incurred by EPA, including: EPA Payroll Costs; EPA Travel Costs; Contractor Costs; Miscellaneous Costs; Inter-Agency

Agreement Costs; Superfund Cooperative Agreement Costs, EPA Indirect Costs; and Prejudgment Interest.  The ICS also reflects all collections and adjustments for the Site through September 30, 2016.  The ICS credits collections and adjustments against the costs and then reports EPA's net unreimbursed Site costs, including prejudgment interest.

9. The ICS was prepared and maintained by EPA in the regular course of its business pursuant to a duty imposed by law under the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. § 300.160.

10. The procedures used for compiling cost documentation, including cost summaries and supporting cost documents, are performed according to EPA guidance, policy, and practice for CERCLA cases.  These procedures were used to compile the ICS for the Site.

11. To provide the documentation for the costs that EPA has incurred at the Site, EPA relied upon Compass Data Warehouse ("CDW") data as reported by SCORPIOS, a multi-user data management system that EPA developed to organize cost information and produce reports that summarize costs on a site-specific basis.  SCORPIOS organized site-specific costs into categories such as EPA payroll, travel, and contractual costs associated with response actions.  This cost information was extracted from EPA's Integrated Financial Management System ("IFMS") for costs before October 2011 and another accounting information system called Compass Financials for costs since October 2011.  EPA's accounting systems separately track costs for different sites using their SSIDs.  As noted above, the SSID for this Site is B5AM.

12. As costs are incurred for a CERCLA site, the costs are paid and entered into IFMS (before October 2011) or Compass Financial (since October 2011).  To prepare a site-specific cost and collections report, EPA cost accountants use a SCORPIOS "staging table" repository that contains data taken from IFMS and data from Compass Financials that is

supplemented on a daily basis. The SCORPIOS staging tables contains information on costs that have actually been paid and collections that have actually been received. For this Site, the cost accountant then used SCORPIOS to generate the ICS, which summarizes all of the costs paid for the Site, including summaries of employee time billed, invoices paid, proof of payment, indirect costs calculations, collections and adjustments, and accrued prejudgment interest. The ICS summarizes more than 3000 pages of underlying documentation.

13. All costs that appear in the ICS are Site-specific costs actually paid by the United States. If EPA was invoiced for a Site cost on or before September 30, 2016, but for some reason had not paid it, then that cost would not be reflected in the ICS. Similarly, if EPA was anticipating a collection, but for some reason had not received the payment by September 30, 2016, then that anticipated collection would not be reflected in the ICS. All collections that appear in the ICS are payments actually received by EPA.

### EPA Payroll Costs

14. The ICS lists Site-specific expenditures for EPA Regional Payroll Costs and Headquarters Payroll Costs, including the employee's name, the number of hours charged, and the pay period and fiscal year during which those hours were charged.

15. Between the mid-1990s and September 30, 2004, EPA's employee Site charges as reflected on time sheets were manually entered into the Electronic Timekeeping System ("ETS"). After the employee printed out the ETS time sheet, the employee's supervisor would review, approve and transmit the time sheet to the regional finance office for manual data entry into EPA's payroll system. When charging time to a site, EPA employees were required to record the SSID and any Operable Unit (OU) account number on the payroll distribution time sheets. Hours charged at this Site are indicated by SSID B5AM and an OU account number, and

are typically followed by an occupational activity description that references the employee's site charge with the activity description, such as "removal oversight" or a similar designation related to the actual activity code used.  Employees certified the accuracy of their time sheets by their signatures; supervisors of the employees also certified the employees' time sheets by their signatures.  Copies of the employee timesheets were then forwarded to the EPA Finance Office for manual entry in the payroll module of IFMS.

16. Beginning on October 1, 2004, EPA converted to a different electronic payroll and time distribution system, called PeoplePlus.  The same SSID and OU account numbers, which were utilized in the ETS system, are utilized in the PeoplePlus system; these are also typically followed by the related occupational activity code description.  Employees electronically certify the accuracy of their time sheets by electronically "attesting and submitting" the timesheets; their supervisors electronically "approve" the timesheets.

17. Prior to implementation of People Plus in October 2004, the EPA Finance Office input ETS time data into the IFMS payroll module that then computed payroll costs for the hours recorded based on each employee's hourly rate.  The hourly rate is the hourly cost of the employee's salary plus health care costs and other benefits.  Between October 2004 and the end of the 2011 fiscal year, the PeoplePlus employee Site charges were downloaded to the IFMS system electronically.  EPA Regional Payroll Costs as computed by IFMS were then downloaded into the SCORPIOS payroll staging table, which sorts EPA Regional Payroll Costs on a site-specific basis.

18. Time data from PeoplePlus also is downloaded into Compass Financials.  EPA Regional Payroll Costs as computed by the Compass payroll module are subsequently also

downloaded into the SCORPIOS payroll staging table.  SCORPIOS sorts EPA Regional Payroll Costs on a site-specific basis.

19. By looking at the time sheets for EPA personnel that charged time to the Site, it is possible to independently confirm the number of hours charged by each employee to the Site and the pay period and fiscal year during which those hours were charged.

20. The ICS contains summaries of the time charges produced from the ETS system, and summaries of detailed data for time reporting produced from the PeoplePlus system.

### EPA Travel Costs

21. The ICS lists Site-specific expenditures for EPA Regional Travel Costs and Headquarters Travel Costs, including the employee's name, travel voucher number, and amount paid to the employee for travel expenses.  Costs incurred for EPA Travel are derived from travel vouchers.

22. In 2004, EPA converted to an electronic travel authorization and cost management system called Travel Manager.  In this system, employees electronically certify the accuracy of their travel vouchers by their signatures.  Supervisors of the employees also electronically certify the employees' travel vouchers by their signatures.

23. In 2007, EPA moved to a newer external travel management service provider that provided reservation, travel authorization, travel vouchering and cost management modules.  This system was called GovTrip.  In this system, as in Travel Manager, employees electronically certified the accuracy of their travel vouchers by their signatures.  Supervisors of the employees also electronically certified the employees' travel vouchers by their signatures.

24. In 2014, EPA transitioned to the latest vendor supported travel management system called Concur.  Except for the need to upload certain travel receipts to support

reimbursement requests, the current process is totally paperless.

## EPA Contractor Costs

25. The ICS lists Site-specific expenditures for EPA contractor costs, including the contractor name, contract number, invoice or voucher number, invoice or voucher date and amount, treasury schedule number, and treasury schedule date. EPA's contractors for the Site were:

- Enforcement Support Services (ESS) Contract: Toeroek Associates Inc. (EPW10011)
- Environmental Advisory Services: Weston Solutions, Inc. (GSF01117J)
- Environmental Services Assistance Teams (ESAT): Techlaw, Inc. (EPW06031)
- Response Engineering and Analytical Contract: Lockheed Martin Technology Services (EPC04032)
- Superfund Technical Assistance & Response Team (START): Roy F. Weston, Inc. (68-W0-0119) and Weston Solutions, Inc. (EPS50604)
- Technical Service and Support: Arctic Slope Regional Corp (ASRC) (68-W0-1002), ASRC Management Services, Inc. (EPW05052), Primus Solutions, Inc. (EPW11024), and Science Applications Int'l Corp (GSF0076J)

26. All of EPA's contracts as identified in the prior paragraph were National and/or Regional multi-site contracts with a site-specific component for the Site. For all of these contracts, SSID B5AM, which appears on vouchers and other contractor documents, indicates costs incurred for work relating to the Site.

27. In general, EPA expenditures for contractor services are documented by contractor invoices or vouchers. Vouchers are periodic (usually monthly) invoices from a

contractor for the work charged under that contract for the period of performance related to the invoice.  Vouchers or invoices from the contractor are reviewed and approved by the EPA project officer, the EPA on-scene coordinator, or other EPA work assignment manager.  Invoice approval forms are then forwarded to the EPA National Contractor Payment Division in Research Triangle Park ("RTP") in North Carolina, which processes the payment of these contracts.  That office prepares a Voucher and Schedule of Payment which authorizes payment for one or more invoices.  The United States Treasury then issues checks and confirms payment via a paid Treasury Schedule.

28.     Before October 2011, data for all direct contractor costs were entered into the IFMS by the Financial Management Division at EPA Headquarters, the Finance Office at EPA Region 5 in Chicago, or the Contracts Payment Division at RTP, North Carolina, which uploads contract disbursements information into IFMS from the Contract Payment System ("CPS"), a separate software system that EPA uses for tracking contractual obligations and transactions.  CPS would send the disbursement data to the United States Treasury for issuance of payments.  When payment confirmation was received by CPS, SCORPIOS would reach back to CPS to pull in the disbursement information.  In October 2011, EPA replaced IFMS with a new system named Compass Financials.  Since October 2011, data for all direct costs is entered into CPS before being uploaded to Compass Financials.  Actual disbursements are made through the United States Treasury in Kansas City as received from Compass Financials.  As contractor vouchers for the work performed in Region 5 are paid, PDF copies of the paper-based vouchers and Treasury Schedules are forwarded to the Region 5 SCORPIOS image repository on a routine basis by the Contracts Payment division of RTP.  The documents are also electronically maintained by RTP.

29.     For the ESS, ESAT, and START contracts, through which costs were incurred at the Site, for each invoice, in addition to the Site-specific amount, an amount is charged to the Site as part of the contractor's annual allocation.  The annual allocation process is the process by which a government contractor's project management costs, which are not specific to any particular Superfund site, are allocated among all of the sites where the contractor provided services to EPA for a particular fiscal year.

### Inter-Agency Agreement Costs

30.     The ICS lists Site charges that were incurred through an Inter-Agency Agreement that EPA entered into with the Department of Justice.  The ICS contains a summary of the amounts paid by EPA to the Department of Justice for Site-specific costs coded to Department of Justice file number 90-11-3-10295.  Mr. William Kime compiled and reviewed the Department of Justice costs.

31.     The ICS also lists Site charges that were incurred through agreements that EPA entered into with the Agency for Toxic Substances & Disease Registry and the U.S. Department of Interior.

32.     Interagency Agreement costs are processed and payments approved by EPA's Cincinnati Finance Center.

### Superfund Cooperative Agreement Costs

33.     Superfund Cooperative Agreement costs are incurred pursuant to agreements for State, Tribal, and political subdivision participation in CERCLA implementation to ensure State and Tribal involvement.  EPA uses Cooperative Agreements to transfer funds to a State, political subdivision, or Indian Tribe that assumes responsibility as the lead or support agency for Superfund responses.  EPA's Las Vegas Finance Center records and processes Superfund

Cooperative Agreements. For this Site, EPA incurred Superfund Cooperative Agreement costs under EPA's agreements, V00E26101, V00E26102, V00E26103 and V96585001, with the Little Traverse Bay Bands of Odawa Indians ("LTBBOI"). Under these agreements, LTBBOI would submit a proposal for performing response activities at the Site and EPA would approve a funding amount. EPA would periodically disburse money to LTBBOI under the agreements in response to drawdown requests by LTBBOI. The ICS summarizes the costs EPA incurred and paid under the Superfund Cooperative Agreement with LTTBOI.

## Other Costs

34.     The ICS contains a summary of the Miscellaneous Costs that EPA incurred for the Site. The Miscellaneous Costs incurred for the Site consist of costs of services that are not covered by other cost categories. Normally these are for payments pursuant to purchase orders for low-cost items, one-time contract payments, advertisements, and payment of credit card charges. Invoices are billed by the vendors for the work done and charged to the Site. When a vendor submits an invoice, the costs are generally broken down by site. The invoice references the Procurement Request number it is associated with, and, once the invoice is approved for payment, the invoice number is then assigned a Treasury Schedule number and paid. These invoices and Treasury Schedule dates and numbers are identified in the ICS.

## Indirect Costs

35.     The ICS contains summaries of the indirect costs associated with the direct costs shown in the ICS. EPA incurs costs that are attributable to the Superfund program. Certain costs are accounted for on a site-specific basis and are identified as direct costs. Other costs, by their nature, cannot be accounted for on a site-specific basis, but are necessary for the administration and operation of the Superfund program and support site-specific cleanup efforts.

Such costs are referred to as indirect costs.  EPA uses a full cost indirect cost methodology to distribute indirect costs in a reasonable and appropriate manner.  EPA announced its intent to use the full cost indirect cost methodology in the *Federal Register*, 65 Fed. Reg. 35339 (June 2, 2000).

36. The EPA Headquarters Financial Management Division has established the indirect cost rates for EPA Region 5 for each fiscal year (October 1 through September 30) from 1991 through 2016 using the full cost indirect cost methodology.  The Region 5 indirect cost rates used for the Site are as follows for fiscal years 2004 through 2016:

FY 2004 (10/1/03 – 9/30/04):  52.57%

FY 2005 (10/1/04 – 9/30/05):  61.71%

FY 2006 (10/1/05 – 9/30/06):  56.23%

FY 2007 (10/1/06 – 9/30/07):  62.91%

FY 2008 (10/1/07 – 9/30/08):  61.66%

FY 2009 (10/1/08 – 9/30/09):  62.76%

FY 2010 (10/1/09 – 9/30/10):  49.25%

FY 2011 (10/1/10 – 9/30/11):  61.61%

FY 2012 (10/1/11 – 9/30/12):  56.41%

FY 2013 (10/1/12 – 9/30/13):  57.47%

FY 2014 (10/1/13 – 9/30/14):  77.22%

FY 2015 (10/1/14 – 9/30/15):  61.96%

FY 2016 (10/1/15 – 9/30/16):  58.49%  *

*2016 Final Rate as of 10/2017.  Exhibit 1, FY 2016 ICS used 61.86% as a provisional rate.

37.     The appropriate indirect cost rate for a particular fiscal year is multiplied by the site-specific costs paid in that year.  This yields the indirect costs for that particular year, and the indirect costs for all applicable years are then added to derive the total EPA indirect costs in an itemized cost summary.  The full cost for a site is the result of adding together the site-specific direct costs and the indirect costs.

<strong><u>Collections/Adjustments</u></strong>

38.     The ICS contains summaries of Collections/Adjustments.  The Collections/Adjustments reflect money that certain Potentially Responsible Parties have paid to EPA as a result of settlement agreements or oversight bills.  The cost total was adjusted downward by subtracting $500,000.00 in Collections/Adjustments coded as recoveries on account number B5AM.

<strong><u>Prejudgment Interest</u></strong>

39.     CERCLA allows EPA to recover prejudgment interest where there has been a written demand for payment of a specified amount.  According to my review of records maintained by the Regional Comptroller Branch, EPA made a written demand that Defendants in this case (including CMS Energy Corp., CMS Land Co., CMS Capital, L.L.C, Bay Harbor Co., L.L.C., and Bay Harbor Golf Club, Inc.) pay EPA a specified amount on October 25, 2010.

40.     To calculate interest for the Site, I used the following standard accounting methodology:

> A. Interest is computed for costs documented in all EPA database files including payroll, indirect costs, travel, and all contract, interagency, cooperative agreement and miscellaneous expenditures.  The interest rates used are given to EPA each fiscal year (October 1 through September 30) for the Superfund

Trust Fund from the Department of the Treasury. Up until September 2011, the interest rate for each successive fiscal year was the yield rate at the time of the U.S. Treasury's annual purchase (late August to early September) of 52-week Treasury Department MK Bills. Since October 2011, the interest rates are those that the U.S. Treasury uses when reimbursing EPA for interest on unspent Trust Fund Balances. On the first day of each fiscal year, October 1, all outstanding receivables, including accrued interest from the previous year(s), will begin to accrue interest at the new rate. The rates used for the Site, which were published in the *Federal Register*, are as follows:

MK Treasury Bill Rates

FY 2005 (10/1/04 – 9/30/05):  2.21%

FY 2006 (10/1/05 – 9/30/06):  4.11%

FY 2007 (10/1/06 – 9/30/07):  5.02%

FY 2008 (10/1/07 – 9/30/08):  4.34%

FY 2009 (10/1/08 – 9/30/09):  2.15%

FY 2010 (10/1/09 – 9/30/10):  2.24%

Interest rates used by U.S. Treasury for unspent Trust Fund Balances.

FY 2011 (10/1/10 – 9/30/11):  0.69%

FY 2012 (10/1/11 – 9/30/12):  0.74%

FY 2013 (10/1/12 – 9/30/13):  0.78%

FY 2014 (10/1/13 – 9/30/14):  0.81%

FY 2015 (10/1/14 – 9/30/15):  0.75%

FY 2016 (10/1/15 – 9/30/16):  0.67%

    B. Interest is compounded annually on the first day of each fiscal year for amounts (including interest) that have been unpaid since the previous fiscal year or earlier.  Simple interest on costs incurred during a fiscal year is not subject to assessment of compound interest during that fiscal year.

41. The ICS contains a summary of the Site costs incurred through September 30, 2016, before prejudgment interest, amounting to $8,576,518.34 in net unreimbursed costs.  The ICS also contains a summary and calculation of the prejudgment interest on the Site costs through September 30, 2016, amounting to $338,107.37 in interest.

## Total Costs

42. The ICS adds the net unreimbursed costs and the corresponding prejudgment interest, yielding a total of $8,914,625.71 in unreimbursed Site costs through September 30, 2016.  The ICS that is attached as Exhibit 1 is a true and accurate compilation and summary of EPA's voluminous documentation for the Site costs and collections coded to account number B5AM.

43. The ICS only reflects EPA costs incurred through September 30, 2016, and interest calculated through September 30, 2016.  EPA has incurred other Site response costs since September 30, 2016, and EPA continues to incur additional Site costs.

## Use of Superfund Special Accounts

44. When EPA collects response costs under a settlement agreement, CERCLA allows EPA to manage the funds in a site-specific special account within the Superfund, rather than in the Superfund's non-site-specific general revolving fund.  Management of funds in a site-specific account may ease funding availability for the site and avoid the need to face competing

demands for an EPA Region's limited "pipeline" funding budget from the Superfund's general revolving fund in a given fiscal year.

45. EPA's CERCLA cost accounting system treats a cost recovery collection in the same manner whether it is assigned to the Superfund's general revolving fund or a site-specific special account within the Superfund. In either case, the collected amount is recorded as a site-specific credit against unreimbursed site costs when the money is received by EPA, and the money is then managed in the same manner as EPA Superfund appropriation funds. For example, the ICS for the Site shows all cost recovery collections as "Collections/Adjustments" without distinguishing between settlement collections paid into a site-specific special account within the Superfund and other cost recovery collections paid into the Superfund's general revolving fund.

46. EPA's CERCLA cost accounting system also treats costs in the same manner, whether EPA pays the costs from the Superfund's general revolving fund or a site-specific special account within the Superfund. In either case, the site-specific cost is recorded as a direct cost to the Superfund and an associated indirect cost is added to reflect the full cost to EPA.

47. Just like money from the Superfund's general revolving fund, money in a site-specific special account within the Superfund can be used to pay various types of EPA direct costs, such as EPA contractor costs or EPA costs of a Superfund Cooperative Agreement with a State. The ICS for the Site shows all such direct costs in the appropriate cost categories – and computes corresponding indirect costs – without distinguishing whether the direct costs were paid from a site-specific special account within the Superfund Trust Fund or from the Superfund's annually appropriated general revolving fund.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 18, 2018 in Chicago, Illinois.

_____

Richard D. Hackley

Supervisory Accountant

U.S. Environmental Protection Agency, Region 5

CERTIFICATE OF SERVICE

I, Steven D. Ellis, hereby certify that on April 20, 2018, a true and accurate copy of the foregoing Declaration of Richard D. Hackley in Support of Plaintiff's Motion for Partial Summary Judgment was served on the following counsel of record in this case through the Court's Electronic Case Filing System:

**Russell B. Selman**
rselman@schiffhardin.com
**Bradley S. Rochlen**
brochlen@schiffhardin.com
**James Michael Showalter**
mshowalter@schiffhardin.com
**Ashley L. Thompson**
athompson@schiffhardin.com
**Katherine S. Walton**
kwalton@schiffhardin.com
**Ed Roggenkamp**
ERoggenkamp@schiffhardin.com

Schiff Hardin, LLP

**Krista A. Jackson**
kjackson@kotzsangster.com
**Philip A Grasoff, Jr.**
pgrashoff@kotzsangster.com

Kotz Sangster Wysocki, P.C.

**Gregory T. Obloy**
gobloy@carsonfischer.com

**Karen H. Safran**

KSafran@carsonfischer.com

**Robert M. Carson**

RCarson@carsonfischer.com

Carson Fischer PLC

                                        s/ Steven D. Ellis
                                        STEVEN D. ELLIS
                                        Senior Counsel
                                        Environmental Enforcement Section
                                        United States Department of Justice
                                        P.O. Box 7611
                                        Washington, D.C. 20044-7611
                                        Telephone: (202) 514-3163
                                        Facsimile: (202) 616-6584
                                        Steven.Ellis@usdoj.gov